IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDWIN PAGAN-APONTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:09-cv-0800 |
| ) | |
| JOHN McHUGH, SECRETARY OF THE ARMY,[1] ) | Senior Judge Thomas A. Wiseman, Jr. |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Edwin Pagan-Aponte, an Hispanic man, filed this action against the defendant Secretary of the Army, in his official capacity, alleging claims of discrimination on the basis of race or ethnicity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e). Now before the Court is the defendant's Motion to Exclude Expert Testimony (Doc. No. 44), in which the defendant seeks to exclude the testimony and report of William P. Anthony, Ph.D. under Rules 401, 402, 403 and 702 of the Federal Rules of Evidence.

The defendant does not challenge Dr. Anthony's credentials as a human resources expert. Rather, he asserts that Dr. Anthony's report and opinion should be excluded because (1) they do not involve specialized subjects requiring expert testimony; (2) it is irrelevant whether the Army followed Anthony's preferred human-resources practices; and (3) admitting Anthony's opinions will unduly prejudice the defendant. (Doc. No. 45, at 1.) The plaintiff responds that (1) Dr. Anthony is clearly qualified by his knowledge, skill, experience, training and education to offer opinions concerning the Army's interview process; (2) his methodology is sufficiently reliable; (3) his opinions will assist the trier of fact to understand the evidence or determine a fact in issue insofar as his testimony can show bias in the selection process that may not be apparent to lay persons; and (4) his testimony is not unduly prejudicial. (*See* Doc. No. 50, at 4–10.) In the alternative, the plaintiff argues that the defendant's motion is premature because discovery has not been completed, and that the matter should be briefed and

---

[1] John McHugh was sworn in as the twenty-first Secretary of the Army on September 21, 2009, after this lawsuit was filed. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. McHugh is automatically substituted for former Secretary Pete Geren as the defendant in this litigation.

considered *after* depositions of defense witnesses have been completed, in order to permit the plaintiff to develop more fully the reasons why Dr. Anthony's testimony is needed.[2]

## Legal Standard

Under Rule 402, irrelevant evidence is generally inadmissible. The admissibility of expert witness testimony is governed by Rules 104(a), 701, 702 and 704 of the Federal Rules of Evidence, applied under the rubric established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Together, the applicable rules, as construed by the Supreme Court, require that the Court ensure that any and all expert testimony or evidence "is not only relevant, but reliable." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 589). The Court must determine[3] whether the expert:

> is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Nelson*, 243 F.3d at 251 (quoting *Daubert*, 509 U.S. at 592–93). Testimony is "scientific" when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Kumho Tire*, 526 U.S. at 152. The proposed testimony must be relevant, in that there must be a "valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592). In other words, there must be a "fit" between the proposed testimony and the questions presented by the case at bar. *Daubert*, 509 U.S. at 591.

## Dr. Anthony's Proposed Opinions

In his Preliminary Expert Report, Dr. Anthony proposes to offer the opinion that "the Army used a flawed interview and selection process in the promotion decision involving Mr. Pagan-Aponte.

---

[2] The plaintiff states: "Discovery is still ongoing in this case and the appropriate human resource or Civilian Personnel Advisory Committee (CPAC) personnel have not been deposed. However, it is anticipated that they will testify that the selections at issue were made in accordance with Army policy and procedures. If Defendant's human resource or Civilian Personnel Advisory Committee (CPAC) personnel testify that the selections at issue are purely subjective and do not defend based upon following Defendant's policies it may well be that Dr. Anthony's testimony is not needed." (Doc. No. 50, at 8–9.)

[3] A "district court is not required to hold an actual hearing" to make this determination. *Nelson*, 243 F.3d at 249.

Furthermore, this flawed process created a situation where bias and racial bias could easily occur." (Doc. No. 45-1, at 1.)  The basis for his opinion, in a nutshell, is that "[t]he Army improperly implemented a flawed interview process, and may have also failed to follow a number of their [sic] own important policies and procedures in the selection process."[4]  (*Id.* at 1–2.)

With respect to the purportedly flawed interview process, Dr. Anthony notes that plaintiff was not selected for the promotion to the position of cook supervisor purportedly because he did not perform as well as other applicants in the interview process.  The person chosen for the position was an African-American woman with no experience in hospital food service.  Dr. Anthony states that "[t]here is information in the material that [he] reviewed that indicates [this person] may have been 'unofficially selected' prior to the interviews."  (*Id.* at 2.)  He does not identify the materials from which he gleaned this information.  The other specific opinions he developed regarding the flaws in the interview process used by the Army in this case are as follows:

(1)  that "specific Knowledge, Skills, Abilities (KSAs) and competencies were [not] developed for the position" and the questions used in the interview were not tied to each "KSA and competency."  (*Id.* at 2.)

(2)  Questions were not "pre-tested with a sample of job incumbents to ensure validity and to determine benchmark responses."  (*Id.* at 2.)

(3)  The interviewers were not "properly trained on proper interviewing techniques and on EEO and affirmative employment as it relates to promotion decisions."  (*Id.* at 2.)  Dr. Anthony adds that in his experience "it takes at least a day to provide sufficient training on interviewing techniques and processes to non-professionals."  (*Id.* at 3.)

(4)  There were no "proper procedures and protocols . . . in place to minimize perceptual and judgment bias."  (*Id.* at 3.)

(5)  "Candidate responses were not evaluated and scored in an objective fashion."  (*Id.* at 4.)

(6)  One of the interviewers (Holland) had a previous EEO complaint filed against him by Pagan-

---

[4] Dr. Anthony asserts that at the time he drafted the Preliminary Expert Report he was "awaiting further documents that deal with interviewing and selection procedures as well as affirmative employment policies and procedures that may bear on the situation."  (*Id.* at 6.)  He therefore could not express a definite opinion as to whether the Army failed to follow its own policies and procedures.

Aponte and should have been excluded from the interview process, and he did not score Pagan-Aponte at all on questions 18, 19, and 20. In addition, there were supposed to be five interviewers but only three showed up, thereby exaggerating any potential bias Holland might have had against Pagan-Aponte.

On the basis of these points, Dr. Anthony concludes that the interviewing process was "severely flawed." (*Id.* at 5.) In support of his conclusions, however, Dr. Anthony does not point to any standard for conducting interviews, nor to any policies and procedures specifically adopted by the Army. Rather, he discusses the importance of developing human resource management policies and procedures with established guidelines. "When an organization has a lack of policy or policy that is improperly implemented and improperly enforced, it opens the door for numerous problems in the workplace including inefficiencies, inconsistencies, misunderstandings, and bias." (*Id.* at 6.)

**Application of the Legal Standard to Dr. Anthony's Proposed Opinions**

The law is well established that an employer's conduct is not required to be fair or to represent good employment practice. Rather, it simply is required to be non-discriminatory. *Cf. Toledo v. Jackson*, 207 F. App'x 536, 538 (6th Cir. 2006) ("The ADEA and Title VII prohibit employers from discriminating against applicants on the basis of protected characteristics; these laws do not require employers to hire the best applicants."); *Wrenn v. Gould*, 808 F.2d 493, 501–02 (6th Cir. 1987) ("Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates. So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates. An employer has even greater flexibility in choosing a management-level employee, as is the case here, because of the nature of such a position." (internal citations omitted)).

In other words, the Army enjoys wide discretion in deciding how to choose among candidates for a position. The fact that the Army used poor practices that might have the potential to lead to or permit bias is beside the point. The pertinent question is whether those practices actually lead to a discriminatory decision in this case. Dr. Anthony's opinion regarding the "flawed process" will not assist the jury in answering that question. In short, Dr. Anthony's opinion that the Army's interview process was "severely flawed" is simply not relevant to the question of whether the plaintiff was subjected to unlawful discrimination. Because it is irrelevant, it is inadmissible under Rule 402, and under *Daubert* and *Kumho Tire*. *Cf. Naeem v. McKesson Drug Co.*, No. 95C425, 2001 WL 1141803, at *2 (N.D. Ill. Aug. 14, 2001)

("Anthony's opinion that [the employer] failed to follow accepted human resources policies is inadmissible. The law is clear that an employer's conduct need not be fair and need not represent good employment practice; it needs only be non-discriminatory. Therefore, the fact that [the employer] acted in a manner which facilitated discrimination, retaliation or emotional distress is not an appropriate subject of expert testimony. . . .").

The last two problems identified by Dr. Anthony—the subjective nature of the scoring and the inclusion of an interviewer about whom Pagan-Aponte had already filed an EEO complaint—are clearly relevant, however. *See, e.g.*, *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009) ("[T]he presence of subjective decision-making can create a strong inference of discrimination. . . ." (citation omitted)); *United States v. City of New York*, 713, F. Supp. 2d 300 (S.D.N.Y. 2010) ("While an employer's use of certain subjective hiring criteria, such as the impression an individual makes during an interview, is not *per se* unlawful, subjective and *ad hoc* employment practices . . . bolster [a] plaintiff['s] claim that defendants discriminated against class members." (internal quotation marks and citations omitted; alterations in original)). The examples of the subjective nature of the scoring cited by Dr. Anthony in his report, however, are of fairly obvious import.[5] So obvious, in fact, that the Court does not believe that the jury needs Dr. Anthony to make the point. Because it does not appear that Dr. Anthony's testimony on these topics "will assist the trier of fact to understand the evidence or determine a fact in issue," Fed. R. Evid. 702, his opinion on these issues is also subject to exclusion.

In short, the Court finds that a lay juror will be capable of evaluating the facts at issue in this case to reach a determination of whether the Army intentionally discriminated against Pagan-Aponte without the presentation of Dr. Anthony's testimony.

**The Discovery Issue**

Pagan-Aponte argues in the alternative that Dr. Anthony should be permitted to testify as to the

---

[5] Dr. Anthony points out that interviewer Holland asked Pagan-Aponte what kind of decisions were most difficult for him. Pagan-Aponte answered, "Firing people/getting rid of people." Holland gave Pagan-Aponte a score of 3 out of 5 on that answer. When asked the same question, the candidate who was ultimately hired, Lawrence, answered, "Letting someone go/these are requirements and if you want the job these are the things you have to do." Holland scored this answer a 5. On another question, "What do you feel an employer owes an employee?" Pagan-Aponte answered, "Respect, counseling, training and manners[a,] treat them the way you want to be treated." Holland again scored this answer a 3. Lawrence answered the same question: "Training," and was again scored a 5 by Holland.

ways in which the Army failed to comply with its own hiring policies and procedures. It is well established that "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances" may be sufficient to prove pretext and discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *see also Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005) ("This systematic abandonment of [the employer's] hiring policies is circumstantial evidence of discrimination."). At this point, however, it is unknown to the Court whether the Army had in place any policies and procedures that applied to the interview process that is at issue in this lawsuit, or whether they were violated. The Court believes it unlikely that these questions, once elucidated, will be sufficiently complex that expert testimony will assist the trier of fact in understanding them. Regardless, the Court will not speculate at this juncture as to whether Dr. Anthony should hypothetically be able to testify about whether the Army complied with hiring policies and procedures that may or may not have existed. If discovery renders this issue relevant, the parties can bring it to the Court's attention at the appropriate time.

## Conclusion

For the reasons set forth herein, the defendant's motion to exclude is hereby **GRANTED.**

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge