**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **EDWIN PAGAN-APONTE,** | ) | |
| | ) | **Case No. 3:09-cv-00800** |
| **Plaintiff,** | ) | |
| | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Bryant** |
| | ) | |
| **JOHN M. MCHUGH, Secretary of the Army,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**ORDER**

Pending before the Court is Defendant Secretary of the Army's Motion for Summary Judgment ("Motion") (Doc. No. 68), filed along with a Memorandum in Support (Doc. No. 69), a Statement of Undisputed Facts (Doc. No. 72), and multiple supporting documents (Doc. Nos. 69-1 to 69-12, 70-1 to 70-10, & 71). Plaintiff Edwin Pagan-Aponte has filed a Response in Opposition (Doc. No. 74), along with a Response to Defendant's Statement of Undisputed Facts (Doc. No. 73), and several exhibits (Doc. Nos. 75-1 to 75-21). Defendant has filed a Reply to Plaintiff's Response. (Doc. No. 79.)

Also pending before the Court is Plaintiff's Motion to Strike (Doc. No. 80), filed along with an attachment (Doc. No. 80-1), to which Defendant has filed a Response in Opposition (Doc. No. 81). For the reasons given herein, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion to Strike as moot.

# I. BACKGROUND[1]

### A. Factual History

Plaintiff, a Hispanic male, was hired as a Wage Grade ("WG") 5 Cook term employee in February of 2003 at the Food Service Branch of Fort Campbell's Supply and Services Division. He then received a one-year term appointment to a Cook, WG-8, position in the Food Service Branch in September of 2003. (Doc. No. 69-2.) In April of 2004, his employment was terminated for lack of work. He was, however re-hired by Blanchfield Army Community Hospital's ("BACH") Nutritional Care Division ("NCD") at Fort Campbell as a WG-2 Food Service Worker a few months later. In February of 2005 he was promoted to a WG-4 Cook position at BACH.

Plaintiff's chain of command during the time he worked at Fort Campbell was as follows: his first line supervisor was Jessie Powell, an African-American male; his second line supervisor was George Holland, an African-American male, and later Jimmy Walker, an African-American male; his third line supervisor was Sergeant First Class ("SFC") Amanda Murrell, a Caucasian female; and, finally, directly above Murrell was the Chief of Nutritional Care Lieutenant Colonel ("LTC") Colleen Kesselring, a Caucasian female.

In March of 2008, Plaintiff's second line supervisor, Holland, needed someone to fill in for a WS-7 Cook Supervisor who was on extended sick leave. Holland selected Errol Holmes, an African-American male who worked as a WG-5 Bakery Worker, to temporarily fill the Cook Supervisor position while receiving on-the-job training in the position. Holland testified that he selected Holmes in large part because it would be the least disruptive to the dining facility mission. On April 7, 2008, Plaintiff complained to the EEO Office about Holland's selection of

---

[1]All facts are undisputed and taken from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 73), unless otherwise noted.

Holmes to receive the on-the-job training, and a roundtable discussion was set up two days later involving the EEO counselor, Plaintiff, and Holland. After the roundtable discussion, Holland had a discussion with LTC Kesselring, and she decided to allow Plaintiff, Holmes, and a third employee, Mr. Woods, each to have a rotation in the Supervisor position. Subsequently, Holmes and Plaintiff received $250 awards each and Mr. Woods received an $150 award for filling in the Cook Supervisor position and receiving on-the job training. The award amount was based upon the time spent in training. The absent Cook Supervisor then decided to retire rather than return to work, and after the vacancy for the position was announced, Plaintiff applied and was interviewed for it.

Plaintiff's resume, submitted with his application, stated he had held the position of "Food Service Supervisor" at Fort Campbell from February of 2003 to April of 2004. However, Plaintiff had in fact been a WG-8 Cook during that time frame and not a "Supervisor." The selection panel for the Cook Supervisor position consisted of Holland, SFC Murrell and SFC Roscoe Wright. On May 30, 2008, the panel unanimously chose an African-American female, Elaine Lawrence, for the position. Lawrence had been in a supervisor position since 1999 (including six years as a Cook Supervisor at Fort Campbell), while Plaintiff had never been a supervisor at Fort Campbell and had only three years of supervisor experience during that same time frame, not including the "Food Service Supervisor" position he claimed to have held from 2003 to 2004 on the resume he submitted. Lawrence received a score of 259 on her interview while Plaintiff received a score of 190. In his deposition, Holland described Lawrence's interview as follows: "Her poise and competence, the way she answered the questions, the answers was right on as far as the pinpoint accuracy when a question was brought to her and I mean she just stood out above the two other candidates that were interviewed."

On June 10, 2008, Plaintiff initiated an informal complaint with the EEO Office alleging, *inter alia*, that he was not selected for the permanent Cook Supervisor position based upon race, gender and retaliation. Shortly thereafter, Plaintiff filed a formal EEO Complaint regarding his non-selection. On November 5, 2008, the Department of Defense Investigation and Resolutions Division ("IRD") held a Fact-Finding Conference on Plaintiff's formal Complaint and received sworn testimony from seven witnesses, including Plaintiff. Plaintiff was represented by counsel and had the opportunity to cross-examine the witnesses. On June 30, 2009, the Army issued a Final Agency Decision finding no discrimination or retaliation. Plaintiff then filed his original judicial complaint in September of 2009 regarding the 2008 non-selection.

In April of 2009, Plaintiff was promoted by LTC Kesselring to Cook WG-5 position, which included a four percent pay raise. Shortly thereafter, Plaintiff applied for a WS-8 Cook Supervisor position, also called a "Cook Foreman." No one was selected for the position. LTC Kesselring announced that she did not like how the interviews went, so she decided instead to offer training in the position to anyone who was interested. After Plaintiff initially expressed interest in the training, he was temporarily appointed to the WS-8 Cook Supervisor position (accompanied by a temporary increase in pay) for a period not to exceed 120 days. However, before he began serving in the temporary position, the "[a]ction was cancelled due to [Plaintiff] declining the position." The position of Cook Foreman was subsequently filled by Jimmy Walker, an African-American male.

In early 2010, a permanent Cook Supervisor WS-7 vacancy was announced. Plaintiff applied for the position and again submitted a resume asserting that he had previously worked as a "Food Service Supervisor" at Fort Campbell. Plaintiff was selected for the referral list for the position. On March 22, 2010, Plaintiff submitted a leave slip indicating that he was "[g]oing to

Hawaii and graduation [and] family vacation" from May 13 to May 26, 2010. The leave was approved by his supervisor, Mr. Walker, on April 2, 2010. According to Plaintiff's deposition testimony, after learning that he had made the referral list in May, Plaintiff asked Mr. Walker, "[D]o you think that it's going to hurt me going on vacation now in case you guys get an interview done?" Walker responded, "I don't know." Plaintiff went on his approved leave without making any further inquiries about the interview schedule.

Subsequently, an interview panel for the vacancy was formed which consisted of Walker, SFC Murrell and SGT Nicholas Okraku (a supervisor in the division) in late May of 2010. The panel interviewed two candidates for the position: Errol Holmes and Bradley Graham. The interview panel attempted to call in several other candidates on the referral list for interviews, but because they did not return the phone calls promptly, they were not interviewed. Mr. Walker, who headed the selection panel, testified that he did not call Plaintiff for an interview because Plaintiff was on leave. (Doc. No. 70-5 at 86-87.) Another member of the interview panel, SFC Murrell, testified that there was no need to call Plaintiff in for an interview because management, including herself, had already interviewed Plaintiff for several positions previously and therefore knew him well. (Doc. No. 70-10 at 59-62.) After the interviews, the Human Resources Department sent an email to SGT Murrell indicating that the panel could select an applicant for a second position as well. Mr. Errol Holmes and Mr. Bradley Graham, a Caucasian male, the two candidates the panel had interviewed, were ultimately selected for the Cook Supervisor position. Graham was a forty percent disabled veteran who had lost his previous job when the factory in which he worked moved to Mexico. After filing a new EEO complaint, Plaintiff amended his judicial complaint on August 20, 2010, to allege discrimination and retaliation as to the 2010 non-selections for the Cook Supervisor vacancies.

Plaintiff alleges that he was not selected for the positions at issue based upon his race, and in retaliation for his protected activity, in violation Title VII of the Civil Rights Act of 1964. (Doc. No. 1 at 4.)

### B.  Procedural History

Plaintiff filed his Complaint against Defendant on September 1, 2009 (Doc. No. 1), and his Amended Complaint on August 20, 2010 (Doc. No. 28).  Defendant filed his Motion for Summary Judgment on December 23, 2011 (Doc. No. 68), along with a Memorandum in Support (Doc. No. 69), a Statement of Undisputed Facts (Doc. No. 72), and multiple supporting documents (Doc. Nos. 69-1 to 69-12, 70-1 to 70-10, 71).  Plaintiff filed a Response in Opposition on January 23, 2012 (Doc. No. 74),[2] along with a Response to Defendant's Statement of Undisputed Facts (Doc. No. 73), and several exhibits (Doc. Nos. 75-1 to 75-21).   Defendant filed a Reply to Plaintiff's Response on February 3, 2012.  (Doc. No. 79.)

Additionally, Plaintiff filed a Motion to Strike (Doc. No. 80) on February 14, 2012 along with an attachment (Doc. Nos. 80-1), to which Defendant filed a Response in Opposition on March 1, 2012 (Doc. No. 81).

## II.  LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter

---

[2] Plaintiff's Response to Defendant's Motion for Summary Judgment is titled "Response to Defendant's Motion for (Partial) Summary Judgment," even though Defendant has moved for summary judgment on all counts.  (Doc. No. 74 at 1.)  Plaintiff's Response attempts to add an additional count into this litigation: Plaintiff's non-selection for a Cook Foreman Position in 2009.  (Doc. No. 74 at 6.)  This claim was not pled in either Plaintiff's Original Complaint or in Plaintiff's Amended Complaint; therefore, the Court will not consider it.

of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

## III.  ANALYSIS

### A.  *Plaintiff's Discrimination Claims*

#### 1.  The 2008 Non-Selection

In order to establish a claim of employment discrimination under Title VII, a plaintiff must either provide direct evidence of intentional discrimination by the defendant, or introduce circumstantial evidence that would support an inference of discrimination.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).  Direct evidence is evidence that if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," and "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal quotations omitted).  In the absence of direct evidence, a plaintiff must present circumstantial evidence through the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green.*  411 U.S. 792 (1973).

If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000).  If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual.  *Id.*  Throughout this burden-shifting process, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To make out a prima facie case, "the plaintiff in a failure to promote discrimination case must show that: (1) the plaintiff is a member of the protected class; (2) the plaintiff applied for and was qualified for the desired position; (3) []he was considered but not selected for the position;" and (4) "he and the non-protected person who ultimately was hired for the desired position had similar qualifications." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240-42 (6th Cir. 2005).

The Court finds that Plaintiff can establish a *prima facie* case of discrimination because 1) as a Hispanic male, he is a member of a protected class, 2) he applied for and was qualified for the desired position, 3) he was considered but not selected for the position, and 4) review of their respective resumes demonstrates that he and Lawrence, the "person who was ultimately selected for the position[,] had similar qualifications."[3] *White*, 429 F.3d at 242. Since Plaintiff has met his burden of establishing a prima facie case of discrimination, a presumption of discrimination arises, which Defendant can overcome by articulating a legitimate, nondiscriminatory reason for the adverse action. *Burdine*, 450 U.S. at 253. If Defendant carries that burden, Plaintiff must then prove that the reasons proffered by Defendant are a pretext for discrimination. *Id.*

Defendant has proffered a legitimate nondiscriminatory reason for its decision to select Lawrence over Plaintiff for the 2008 vacancy: Lawrence was selected over Plaintiff because she had superior credentials to Plaintiff. (*See* Doc. No. 70-9 at 47-48) ("Q. What was the difference in Ms. Lawrence's resume and Mr. Pagan-Aponte's? A. She had far more supervisory experience"). Prior to her selection for the Cook Supervisor position, Lawrence was a WS-4 Cook Supervisor at Fort Campbell from May of 1999 to May of 2005. (*See* Doc. No. 75-1 at 1-2). She was a Cook Leader, WG-8, whose duties included training and reprimanding employees and serving as Acting Dining Facility Manager. (*Id.*) She was also an Executive Chef, which

---

[3] Defendant does not dispute that Plaintiff meets the first three requirements for a prima facie discrimination claim.

involved supervising and evaluating twenty-five employees in the year prior to her 2008 selection as Cook Supervisor. (*Id.*) Not including Plaintiff's falsified "Food Service Supervisor" position, Plaintiff had less than three years' experience as a Supervisor when he was Food Service Director at Bordeaux Hospital in Nashville from December of 1999 to November of 2002, and had no supervisor experience at Fort Campbell. (Doc. No. 70-3 at 1-3.)

Furthermore, the members of the three-person panel unanimously indicated that they chose Lawrence based upon her superior interview: Lawrence received a score of 259 on her interview while the plaintiff received a score of 190. (See Doc. No. 69-8. ) Selecting official George Holland testified that Lawrence's "poise and competence, the way she answered the questions, the answers w[ere] right on as far as the pinpoint accuracy when a question was brought to her and I mean she just stood out above the two other candidates that were interviewed." (*See* Doc. No. 69-5 at 84- 86.)

This proffered explanation for the decision to hire Lawrence over Plaintiff is facially legitimate and non-discriminatory; it is "clear and reasonably specific," *Burdine*, 450 U.S. at 258, and is arguably supported by "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus," *id.* at 257. The Court therefore turns to the final part of the *McDonnell Douglas* analysis, Plaintiff's showing of pretext.

Pretext may be established "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is

insufficient to explain the employer's action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). However, a plaintiff may also demonstrate pretext by offering evidence that challenges the reasonableness of the employer's decision "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 5768 (6th Cir. 2003) (en banc). However, the plaintiff's "blanket denial" of the employer's articulated reasons for the adverse action "is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[T]he plaintiff's denial of the defendant's articulated legitimate reason [unsupported by] substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment.").

In attempting to refute the factual basis for Defendant's proffered non-discriminatory reason, Plaintiff makes several arguments. First, Plaintiff alleges that Defendant did not follow "its own polices and procedures" in selecting Lawrence over Plaintiff. (Doc. No. 74 at 18.) Plaintiff, however, does not specify which policies and procedures were allegedly violated. Next, Plaintiff alleges that Defendant used a "purely subjective standard" in choosing Lawrence over Plaintiff. (Doc. No. 74 at 18.) However, the Sixth Circuit has established that subjective criteria is not enough to prove that a Title VII violation occurred. *Browning v. Dep't of Army*, 436 F.3d 692 (6th Cir. 2006) ("Questioning the Army's hiring criteria is not within the province of this court, even if the Army's hiring process was entirely subjective."). Lastly, Plaintiff seems

to question whether Lawrence was actually chosen on the basis of her interview performance, as Defendant avers. (*See* Doc. No. 74 at 16-18.)

A decisionmaker's determination that an applicant did not interview well or had inferior credentials can only be evidence of pretext if it was "an error too obvious to be unintentional." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *Browning*, 436 F.3d at 698 (explaining that "what matters" is the employer's perception of the applicant's qualifications, and noting that the Sixth Circuit affords "great flexibility to employers when selecting management personnel"); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates"). "An employer has even greater flexibility in choosing a management-level employee . . . because of the nature of such a position." *Wrenn*, 808 F.2d at 502.

Plaintiff is not able to present any evidence that the selecting panel members' determination was "an error too obvious to be unintentional." Furthermore, Plaintiff has not shown that Defendant's explanation for its decision has no basis in fact or was not the actual reason, nor has he shown that Defendant's explanation is insufficient to explain its decision. *Imwalle*, 515 F.3d at 545. He has not shown that Defendant's evaluation of Lawrence's qualifications, along with Defendant's assessment of Lawrence's interview performance, was unreasonable to such an extent as to suggest that the proffered reason was not Defendant's actual motivation. *Wexler*, 317 F.3d at 578.

Therefore, Plaintiff is not able to show that Defendant's proffered reason for selecting Lawrence over Plaintiff was pretext. Because Plaintiff cannot establish that Defendant's reasons proffered for not selecting him for the 2008 Cook Supervisor vacancy were pretextual, the Court

**GRANTS** summary judgment to Defendant on Plaintiff's claims regarding his non-selection for the 2008 vacancy.

## 2. The 2010 Non-Selections

Defendant argues that it should be granted summary judgment as to Plaintiff's claims regarding the 2010 non-selections because Plaintiff cannot establish a prima facie case of race discrimination because he cannot show that he was significantly more qualified than the selectees. (Doc. No. 69 at 2.) Moreover, Defendant alleges that Plaintiff cannot demonstrate that Defendant's proffered reason for not selecting him was pretext for discrimination. (*Id*.)

As discussed above, it is undisputed that Plaintiff satisfies the first three requirements for a prima facie case of employment discrimination. The Court must therefore evaluate whether Plaintiff has established that he meets the fourth prong of the test, which requires that he prove that his credentials were substantially similar to those of the candidates who were successful in obtaining the 2010 Cook Supervisor positions. The Court's comparison of Bradley Graham's resume, Errol Holmes's resume, and Plaintiff's resume reveals that all three candidates for the 2010 position of Cook Supervisor had similar qualifications. (*See* Doc. No. 70-3.) Therefore, the Court finds that Plaintiff has established a prima facie case of discrimination. The Court will now consider Defendant's explanation for Plaintiff's non-selection.

Defendant avers that its legitimate, non-discriminatory reason for selecting Holmes and Graham over Plaintiff for the 2010 Cook Supervisor positions is that the two candidates selected were deemed to be the most qualified candidates for the position based upon their resumes and interviews. (Doc. No. 79 at 20.) "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record

13

contains other probative evidence of discrimination." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011); *Bender*, 455 F.3d 612 at 627 (noting that the plaintiff could not show that his qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former"). The Court finds that Plaintiff cannot establish either that he was a plainly superior candidate or that the record contains other probative evidence of discrimination.

As an initial matter, the Court finds that Holmes could have been considered more qualified than or as qualified as Plaintiff because he had a great deal of management experience. (*See* Doc. No. 70-3 at 7-9.) Specifically, Holmes had approximately fourteen years of management experience on his resume, including work as a Cook Supervisor, Assistant Contract Manager and work in Senior Food Operations Management. *Id.* The Court also finds that although the second selectee, Graham, did have less recent food service experience than Plaintiff, he had a substantial amount of experience managing employees as a Team Leader or Supervisor. (*Id.* at 3-6.) For most of the last ten years prior to Graham's applying for the position at issue, he had been in management or team leader positions. As a Corrections Officer, Graham was tasked with supervising prison inmates. (Doc. No. 70-3.) From 2003 to 2008, Graham also worked as a Team Leader at a factory. (*Id.*) While a selecting official could have selected Plaintiff over Mr. Graham based on Plaintiff's greater food industry experience, it cannot be said that Plaintiff's qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender*, 455 F.3d at 627. The Court finds that a selecting official could have just as reasonably chosen Graham over Plaintiff because of his demonstrated management experience.

As such, the Court finds that Plaintiff has not established that he was either "a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former," or that he "was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Provenzano*, 663 F.3d at 815; *see also Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons."); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates.").

Moving to the third step, Plaintiff makes several arguments in an attempt to establish that Defendant's preferred reason for not selecting Plaintiff for the 2010 vacancies was pretext. (Doc. No. 74 at 19-22.) First, Plaintiff attempts to establish that his qualifications were plainly superior to those of Holmes and Graham. (*Id.* at 19.) However, as discussed above, Plaintiff is unable to make such a showing. Next, without any citations to the record, Plaintiff alleges that:

> Murrell tries to defend her actions by saying that Plaintiff did not communicate well and had an attitude. However, he was evaluated on March 8, 2011 by his immediate supervisor Powell, and Jimmy Walker as well, where he was noted for being very dependable, demonstrates that he can perform duties at the higher level, communicates clearly, was a very good team player, is very flexible when change occurs, and takes on additional responsibilities when called upon.

(*Id*. at 20.) The evaluation to which Plaintiff refers was an evaluation of Plaintiff in his position as a WG-5 Cook, while the 2010 selection panel evaluated him with regard to his becoming a WS-7 Cook Supervisor. The Court finds that Plaintiff's reference to the March 8, 2011 evaluation is inapt because the selection panel was not charged with evaluating Plaintiff's performance as a lower-level WG-5 Cook, but as a potential WS-7 Cook Supervisor. Moreover, courts have held that "there is certainly nothing inherently discriminatory about an employer's

decision to use criteria other than past performance evaluations to determine whether its employees can meet the increased workplace expectations." *Cerutti*, 349 F.3d at 1064.

Because the Court finds that Defendant's preferred reasons for not selecting Plaintiff for the 2010 vacancies are reasonable, and does not find that Plaintiff has put forward "other probative evidence of discrimination," *Provenzano*, 663 F.3d at 815, the Court **GRANTS** summary judgment to Defendant on Plaintiff's 2010 discrimination claim.

### B. Retaliation Claims

In order to establish a *prima facie* case of retaliation, a plaintiff must show that: 1) he engaged in an activity protected by Title VII; 2) the defendant knew of the exercise of his civil rights; 3) the defendant took an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *Hollins v. Atl. Co.*, 188 F.3d. 652, 661 (6th Cir. 1998) (citing *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991)). The parties agree that the first three elements have been satisfied. Thus, the Court turns only to the causal connection part of the retaliation standard.

Plaintiff makes three arguments in an attempt to establish that a causal connection exists between the adverse employment action and his protected activity. First, Plaintiff argues that the temporal proximity between his 2008 EEO complaint, which he filed on April 7, 2008, and the denial of his promotion, which occurred on May 29, 2008, may establish causation with regard to his 2008 non-selection. (Doc. No. 74 at 13.) Second, Plaintiff argues that participant knowledge—namely the fact that "all decisionmakers have testified that they were aware of Plaintiff's protected activity shortly after each event occurred"—contributes to establishing a causal connection between the protected activity and the adverse employment action. (*Id*. at 13.) Lastly, Plaintiff argues that changes in the way he was treated by Defendant's employees

establish a causal connection between his protected actions and adverse employment decisions that he faced.  (*Id*. at 14.)

With regard to the change in his treatment, Plaintiff makes three factual allegations. First, Plaintiff alleges that Walker admitted that he "used to speak to Plaintiff but that he no longer will," and that Walker was "the deciding official for two of the selections at issue."  (Doc. No. 74 at 14.)  Plaintiff next cites Corey Alderman's testimony that "once Plaintiff went to the EEO office, Kesselring would hardly speak to him."  (*Id*.)  Lastly, Plaintiff cites to Alderman's testimony and asserts that "Walker labeled Plaintiff a trouble maker and stated that that is why Plaintiff was not selected for the 2008 position."  (*Id*.)

Addressing Plaintiff's arguments in turn, the Court notes that "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim."  *Balmer v. HCA, Inc.*, 471 F.3d 588, 615 (6th Cir. 2006) (internal citations omitted).  Furthermore, the Sixth Circuit has stated that, "in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn."  *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).  Examining the totality of the circumstances, the Court finds no such inference is warranted here.

Next, the Court notes that Defendant's knowledge of a Plaintiff's protected conduct is merely one factor in the multi-factor inquiry required in cases where retaliation is alleged. *Hollins*, 188 F.3d at 661.  Though Plaintiff is able to establish Defendant's knowledge of his protected activity, such knowledge is merely one part of the retaliation inquiry, as a plaintiff must also prove that a causal connection exists in order to prove a prima facie case of retaliation.

*Hollins*, 188 F.3d at 661. Furthermore, the Court was unable to find any authority for the proposition that decisionmaker knowledge of a plaintiff's protected activity, without more, is sufficient to establish a causal connection between a plaintiff's protected activity and adverse employment actions. Therefore, the Court finds that Plaintiff's allegations regarding Defendant's knowledge do not suffice to establish the causal connection required to make out a prima facie case of retaliation.

Lastly, in evaluating Plaintiff's evidence regarding change in how he was treated at work, the Court finds that Alderman's statement about Kesselring's treatment of Plaintiff does not suffice as probative evidence of retaliation against Plaintiff. First, Plaintiff has ignored that Alderman went on to note that his observation might be based on the fact that Plaintiff was moving around a lot as a result of training. (Doc. No. 69-5 at 122.) Moreover, Kesselring was not on the selection panels for either the 2008 or 2010 positions, and therefore is a non-decisionmaker. The Sixth Circuit has held that remarks by non-decisionmakers do not constitute evidence of discrimination. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.").

In further attempting to establish a change in treatment, Plaintiff claims that "Walker admits that he use [sic] to speak to the plaintiff but that he no longer will." (Doc. No. 74 at 14.) The Court finds that Walker's testimony cannot be construed to lend support to Plaintiff's claim that Walker's less frequent interactions with Plaintiff are due to a retaliatory motive. In fact, Walker testified that he speaks to everyone, including Plaintiff, and that he had spoken to Plaintiff as recently as a week before his deposition. (*See* Doc. No. 70-4 at 50.) Walker did agree that he has not initiated a conversation with Plaintiff recently, but he explained that that

has to do more with his change in position and the constraints it puts upon his time. (*Id.* at 54.) At most, the evidence shows that Walker spoke to Plaintiff less than he used to and did not recently initiate any conversations with him.

Plaintiff also attempts to use Corey Alderman's testimony to establish that changes in Defendant's treatment of Plaintiff were due to retaliation. Plaintiff cites Alderman's testimony in claiming that "Walker labeled Plaintiff a trouble maker and stated that that is why Plaintiff was not selected for the 2008 position." (Doc. No. 74 at 14.) Plaintiff misstates Alderman's testimony. Alderman testified that Walker called Plaintiff a troublemaker in 2008; however, Walker never told Alderman that was the reason Plaintiff did not get promoted in 2008. (*See* Doc. No. 69-5 at 123-124.) Furthermore, Alderman testified that at no point did Walker mention Plaintiff's EEO activity in referencing him as a trouble maker. (*Id.* at 124.) Moreover, the Court doubts the relevancy of this testimony; therefore, his statement is not relevant to that non-selection, and Walker's comment was made two years prior to the 2010 non-selections in which Walker was involved. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1062-63 (7th Cir. 2003) ("Kline was not a member of either selection panel and Reardon merely sat in on the selection panel meetings as a moderator of sorts. Thus, any statement made by either of these individuals that amount[s] to mere speculation as to the thoughts of the decisionmaker [is] irrelevant to an inquiry of discrimination.") Thus, even if the remarks were to be considered in some way retaliatory (and there is no indication they were), they would be too far removed in time from Walker's role as a decision-maker in 2010 to have any probative value. *See Suits v. The Heil Co.*, 192 F. App'x 399, 403 (6th Cir. 2006) (discriminatory remarks made three months before termination does not allow finding of "sufficient nexus between the attitude that might be reflected in the remarks and the adverse employment action").

The Court also notes that some of Defendant's actions toward Plaintiff undermine Plaintiff's arguments regarding retaliation. After Plaintiff initiated an informal EEO complaint over not being given a turn as a temporary cook supervisor, Defendant immediately conducted a roundtable discussion and remedied the situation by providing Plaintiff the temporary promotion and training he sought. (*See* Doc. No. 69-5 at 49.) Moreover, after Plaintiff filed a formal complaint of discrimination, Defendant promoted him from a WG-4 Cook to a WG-5 Cook position. (*See* Doc. No. 69-10.) Finally, after he filed his federal court complaint in September of 2009, Plaintiff was offered a temporary promotion to a WS-8 Cook Foreman position, which he turned down. (*See* Doc. No. 70-2.)

The Court finds that Plaintiff's proferred arguments regarding temporal proximity, change in treatment, and decisionmaker knowledge are insufficient to establish a causal connection between Plaintiff's protected conduct and the adverse employment actions that Plaintiff suffered—a requirement for a prima facie retaliation claim. Because Plaintiff cannot establish a prima facie case of retaliation with regard to either the 2008 or 2010 non-selections, the Court will not reach the issue of whether Defendant's proffered reasons for not selecting him were pretextual. The Court therefore **GRANTS** summary judgment to Defendant on Plaintiff's retaliation claims regarding the 2008 and 2010 Cook Supervisor vacancies.

### IV. MOTION TO STRIKE

Plaintiff's Motion to Strike (Doc. No. 80) asks that the Court strike "that portion of Defendant's Motion for Summary Judgment pertaining to the after-acquired evidence defense, to wit: 'Summary Judgment Should be Grant to the Army on the Issue of Back Pay Post April 13, 2011, Front pay type damages.'" (Doc. No. 80 at 1) (citing Doc. No. 69 at 20). Because the Court grants summary judgment to Defendant on all claims, the Court will not reach Defendant's arguments regarding limits on Plaintiff's potential damages award. Because the Court has not

determined that Plaintiff is entitled to damages and Plaintiff's Motion to Strike seeks to strike

Defendant's arguments regarding limits on Plaintiff's potential damages award, Plaintiff's

Motion to Strike is **DENIED as moot**.

### V. CONCLUSION

For the reasons described above, Defendant's Motion for Summary Judgment is

**GRANTED**, and Plaintiff's Motion to Strike is **DENIED as moot**.

It is so ORDERED.

Entered this the ___5th_____ day of April, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT